No. 23-3779

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

United States of America,

*Plaintiff-Appellee,*

v.

Brandon Wade Kurns,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the District of Montana,
Cause No. CR-23-01-H-BMM,
The Honorable Brian Morris, Presiding

---

## APPELLANT'S OPENING BRIEF

Samir F. Aarab
Boland Aarab PLLP
11 5th Street North, Suite 207
Great Falls, MT 59401
(406) 315-3737
sfaarab@bolandaarab.com

*Attorney for Defendant-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF DETENTION STATUS ................................................ 1

STATEMENT OF THE ISSUE ................................................................. 2

STATEMENT OF THE CASE AND FACTS ........................................... 2

  A.  The Modern Pawn investigation and the charge against Mr. Kurns. ............................................................................................... 4

  B.  The USPO's inquiry into the semiautomatic enhancement on behalf of the Government and the ensuing due process questions at the sentencing hearing. ..................................................................... 7

SUMMARY OF THE ARGUMENT ...................................................... 19

STANDARDS OF REVIEW .................................................................. 22

ARGUMENT ......................................................................................... 23

  I.  The district court violated the Fifth Amendment and committed reversible error when it increased Mr. Kurns's total offense level by 8 points, in reliance on facially insufficient evidence under any standard of proof. ...................................................................... 23

    A.  Due Process demands that the Government prove Mr. Kurns's sentencing enhancements by clear and convincing evidence because the enhancements were not based on facts found during the guilt phase. ..................................................................................... 25

    B.  The district court violated Mr. Kurns's right against self-incrimination when it qualitatively compared the Government's insufficient evidence with Mr. Kurns's silence. ................................ 28

    C.  The Government's evidence that Mr. Kurns possessed a semiautomatic weapon with a large capacity magazine is insufficient under any evidentiary standard. .................................... 33

    D.  These errors resulted in at least a two-point increase for the additional firearms and a six-point increase for the semiautomatic

i

weapon in Mr. Kurns's total offense level, substantially affecting his
Due Process rights...............................................................38

CONCLUSION ....................................................................40

## TABLE OF AUTHORITIES

**Constitutional Provisions**

U.S. Const., art III, § 2, cl. 1 ............................................................. 3, 25

U.S. Const. amend. V ........................................................................ 25

**Statutes**

18 U.S.C. § 3231 ...................................................................................... 3

18 U.S.C. § 3553(a) ..................................................................... 20, 41, 42

18 U.S.C. § 922(g)(1) ................................................................ 3, 4, 7, 29

28 U.S.C. § 1291 ...................................................................................... 3

**Cases**

*Beckles v. United States,*
    580 U.S. 256 (2017) .............................................................. 36

*Estelle v. Smith,*
    451 U.S. 454 (1981) .............................................................. 26

*Mitchell v. United States,*
    526 U.S. 314 (1999) ......................................................... 26, 30

*United States v. Gasca-Ruiz,*
    852 F.3d 1167 (9th Cir. 2017) (en banc) .............................. 24

*United States v. Hymas,*
    780 F.3d 1285 (9th Cir. 2015) ................................... 27, 28, 29

*United States v. Lucas,*
    70 F.4th 1218 (9th Cir. 2023), *reh'g en banc granted, opinion vacated,*
    77 F.4th 1275 (9th Cir. 2023)........................................ passim

*United States v. McCarns,*
   900 F.3d 1141 (9th Cir. 2018) ....................................24

*United States v. Mezas de Jesus,*
   217 F.3d 638 (9th Cir. 2000) ...................................... passim

*United States v. Nungaray,*
   697 F.3d 1114 (9th Cir. 2012) ....................................24

*United States v. Parlor,*
   2 F.4th 807 (9th Cir. 2021)........................................29

*United States v. Prigan,*
   8 F.4th 1115 (9th Cir. 2021)......................................24

*United States v. Restrepo,*
   946 F.2d 654 (9th Cir. 1991) .....................................32

*United States v. Treadwell,*
   593 F.3d 990 (9th Cir. 2010) .....................................28

*United States v. Valensia,*
   222 F.3d 1173 (9th Cir. 2000), *vacated on other grounds by United States v. Valensia,* 532 U.S. 901 (2001) ...............................27

**Rules**

Fed. R. App. P. 4(b)(1)(A) ..........................................3

**U.S. Sentencing Guidelines**

USSG § 2K2.1..................................................... passim

USSG § 5A ......................................................9

## STATEMENT OF JURISDICTION

The United States District Court for the District of Montana had jurisdiction over the original criminal action under Article III, Section 2, Clause 1 of the United States Constitution and 18 U.S.C. § 3231 because this case is a criminal proceeding against Mr. Brandon Kurns, a defendant accused of violating 18 U.S.C. § 922(g)(1), Prohibited Person In Possession Of Firearms and Ammunition.  ER-3.  Mr. Kurns appeals his sentence of 36 months' imprisonment.  ER-4.  This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.  The district court issued its final judgment on November 14, 2023.  ER-3. Mr. Kurns's appeal is timely under Fed. R. App. P. 4(b)(1)(A) because he filed his notice of appeal on November 27, 2023, 13 days after judgment was entered.  ER-208.

## STATEMENT OF DETENTION STATUS

The Defendant and Appellant, Brandon Wade Kurns ("Mr. Kurns"), has been paroled from his State sentence and is in custody awaiting transfer to a federal prison.  His projected release date is November 14, 2026.

1

## STATEMENT OF THE ISSUE

I.    Did the district court violate the Fifth Amendment and commit reversible error when it increased Mr. Kurns's total offense level by 8 points, in reliance on facially insufficient evidence under any standard of proof?

## STATEMENT OF THE CASE AND FACTS

Mr. Kurns pleaded guilty to one count of violating 18 U.S.C. § 922(g)(1), Prohibited Person in Possession Of Firearms and Ammunition.  ER-3.  Mr. Kurns's status as a prohibited person came from a string of state offenses associated with his drug addiction and related criminal behavior between 2018 and 2021, including DUI, theft, criminal endangerment, and controlled substance charges.  ER-184–85.

Mr. Kurns's history with substance abuse originated in his infancy; he was born addicted to methamphetamine and heroin because of his mother's drug use during pregnancy.  ER-184.  After enduring an abusive and chaotic childhood, he was adopted into the Kurns family when he was eight years old.  ER-182–83.  In 2012, Mr. Kurns joined the U.S. Army Reserve and served for six years, including a deployment in Syria.  ER-183.  Though the Government belittled his service at

2

sentencing, asserting that Mr. Kurns's job involved nothing more than "human resources, basically dealing with the mail[,]" Mr. Kurns actually earned an Army Commendation Medal for his exemplary service transporting classified documents and supplies during clandestine missions through combat zones.  ER-109, ER-183.

After Mr. Kurns left the army in 2018, he began drinking heavily and eventually progressed to using cocaine and methamphetamine.  ER-184.  In 2018, Mr. Kurns was convicted of criminal endangerment and received a three-year deferred sentence; he was serving that probation at the time of the charges in this case.  ER-132, ER-185–86.  This period of addiction brought Mr. Kurns into Modern Pawn & Consignment ("Modern Pawn") for extra cash in May of 2021, where he sold a $10 box of "used" ammunition and later, two firearms: a revolver and a bolt-action rifle.  ER-161–62.  Neither weapon is a semiautomatic.  ER-24–25, ER-161–62.  In June of 2021, Mr. Kurns began working at the pawnshop, and he informed the state probation office that the shop bought and sold firearms.  ER-186.  The office advised him to find a different job but did not revoke his probation.  ER-186.

3

### A.    The Modern Pawn investigation and the charge against Mr. Kurns.

Modern Pawn & Consignment came to the attention of federal investigators in the summer of 2021 when they began tracking gunpowder stolen from a local sporting goods store.  ER-185.  The owners of Modern Pawn, Isaiah and Catherine Morsette, were selling stolen guns, gunpowder, and firearms to prohibited persons.  ER-185. Their "business model" relied on employing others to handle the sale and receipt of weapons in part because the Morsettes themselves were prohibited from possessing firearms.  ER-19–20, ER-27.  As the district court pointed out, hiring felons had the added advantage of giving the Morsettes "some control" over the people they employed in their illicit enterprise.  ER-19–20.  Among their regular employees was Mr. Kurns, who worked at Modern Pawn for about six weeks from June to mid-July 2021.  ER-148, ER-186.

Federal law enforcement officers raided Modern Pawn on July 15, 2021, shortly after Mr. Kurns quit.  ER-148, ER-186.  On July 16, Mr. Kurns was hospitalized for methamphetamine-induced psychosis.  ER-186.  Due to his drug use, the State of Montana revoked Mr. Kurns's probationary sentence on July 30, 2021.  ER-186.  In the following

4

months, Mr. Kurns participated in drug treatment while in prison and then continued his recovery on parole in the Pine Hills facility for about two months until August, 2022. ER-186. Upon his release, he maintained his sobriety and began working as a housekeeper, and he was quickly promoted to Maintenance Director at Mount Ascension Transitional Care facility. ER-186–87.

Eighteen months after Mr. Kurns's employment at Modern Pawn, the Government indicted him on the 18 U.S.C. § 922(g)(1) charge in this case. ER-187. Mr. Kurns timely took responsibility for his actions and entered a guilty plea. ER-97–98. The Government did not offer Mr. Kurns a plea agreement. ER-102, ER-213.

Mr. Kurns admitted to possessing two weapons he sold to Modern Pawn as a customer, for which the Government could produce both video surveillance footage and documentation for the transfer. ER-23–24, ER-142–43. Apart from the items Mr. Kurns sold to the shop as a customer, the entirety of Mr. Kurns's sentencing calculation for the firearm quantity and semiautomatic enhancements under the Guidelines rests on transactions that took place between Modern Pawn and its customers during the few weeks Mr. Kurns worked there. *See,*

5

*e.g.*, ER-28, ER-98, ER-109–10, ER-146–56, ER-185–86.  Investigators

described Mr. Kurns's involvement as follows:

> Additional information developed during this investigation
> identified KURNS as an employee at Modern Pawn &
> Consignment, Inc. from approximately June 2021 to July
> 2021. During his *employment*, its [sic] alleged KURNS
> handled firearms and ammunition inventory *and conducted
> background checks for firearms purchases* as well. . . . On
> multiple dates, in what appears to be *in accordance with his
> employment*, KURNS can be seen handling and possessing
> various *unidentified* firearms while in the store.

ER-148 (emphasis added).  The Government did not offer evidence at

any stage of the proceedings that Mr. Kurns possessed any firearm

outside the four walls of Modern Pawn.

Beyond the weapons that Mr. Kurns sold to Modern Pawn, the

Government attempted to prove Mr. Kurns's possession of several

additional firearms in the course of his employment through two

sources of evidence: stills from video footage of Mr. Kurns from Modern

Pawn's security cameras, and forms used by gun retailers to track the

transactions (ATF 4473 Forms).  ER-27, ER-151.  Six of these forms

listed Mr. Kurns as the store's transferor.  ER-27, ER-151.

Completing the paperwork, phone calls, and background checks

necessary to complete an ATF 4473 Form takes time.  The custom and

6

practice at Modern Pawn was to have one employee handle the weapon and the transaction with the customer while another employee conducted the background check and completed the ATF Form.  ER-59–60, ER-188.  Because of this convention, the fact that an employee filled out the ATF 4473 Form does not guarantee that the same employee actually handled the weapon that is the subject of the transaction.  ER-60–61.

From what law enforcement could gather from police reports, the six ATF 4473 Forms, and video surveillance, they identified nine specific firearms bought or sold in Modern Pawn while Mr. Kurns was working, allegedly as the employee who facilitated the transactions.  ER-157.  None of these firearms is identified in the ATF report as a semiautomatic weapon with a large capacity magazine.  ER-157.

## B. The USPO's inquiry into the semiautomatic enhancement on behalf of the Government and the ensuing due process questions at the sentencing hearing.

Mr. Kurns's base offense level was 14.  ER-125; U.S. Sent'g Comm'n, Guidelines Manual §§ 2K2.1(a)(6), 5A (Nov. 2023) (defendant was a prohibited person at the time of the offense).  The Government

7

requested a six-point increase, raising the adjusted offense level to 20, because it alleged Mr. Kurns's offense involved a semiautomatic firearm with a large capacity magazine under USSG § 2K2.1(a)(4)(A). ER-97, ER-125. The Government requested a further four-point increase for the specific offense characteristic of possessing 8–24 firearms under USSG § 2K2.1(b)(1)(B), rather than a two-point increase for 3–7 firearms. ER-122.

The Government based its request for the additional two points for firearm quantity on the weapons listed in the ATF investigation as having been bought or sold at Modern Pawn while Mr. Kurns was working there. ER-122–24. At sentencing, defense counsel argued that the Government had the burden of proving Mr. Kurns exercised control over each weapon underlying the requested sentencing enhancement. ER-21. The Government called Agent Enk to explain the surveillance stills and the significance of the six ATF 4473 Forms, several of which either did not have surveillance stills corroborating them or had video footage showing Mr. Kurns *not* handling the weapons. ER-25, ER-189.

Defense counsel questioned the sufficiency of using the ATF 4473 Form alone to establish possession when Mr. Kurns could have been

8

assisting another employee with the paperwork and background check without ever controlling the weapon. ER-37–40. Because defense counsel asked Agent Enk whether surveillance footage corroborated the ATF Form for each weapon individually, the district court intervened: "Mr. Aarab, I'm assuming we're going to get the same answer for all of these weapons." ER-40. When defense counsel argued that he needed to develop the record, the district court responded:

> The Court: I guess, if you want to add to your evidence, you can put Mr. Kurns on the stand under oath and have him deny that he handled those weapons if that's the evidence.
>
> Mr. Aarab: It's the government's burden of proof.
>
> The Court: I know. I'm just saying if the government – their burden is the testimony of Agent Enk here.
>
> Mr. Aarab: Yes.
>
> The Court: You can finish your cross-examination. But my point is if you are going to try to – it's a preponderance of the evidence standard here in the sentencing hearing. If you want to meet the preponderance, you can put Mr. Kurns on the stand and have him deny that he touched those weapons under oath.

ER-40–41. Mr. Kurns did not testify under oath at the hearing. ER-12.

The Government's original grounds for requesting a six-point increase in Mr. Kurns's offense level was its allegation that Mr. Kurns handled *one* weapon at Modern Pawn that fit the definition of a

9

semiautomatic firearm with a large capacity magazine, a Glock Model 17. ER-125. In order to obtain the adjusted offense level for possession of a semiautomatic firearm with a large capacity magazine, the Government must prove the firearm and magazine had all the features described in the Guidelines definition. ER-79. The Guidelines define a semiautomatic firearm that is capable of accepting a large capacity magazine as:

> a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm. This definition does not include a semiautomatic firearm with an attached tubular device capable of operating only with .22 caliber rim fire ammunition.

USSG § 2K2.1 app. n.2. Thus, the Government must prove a magazine capable of accepting more than 15 rounds was attached to the firearm at the time of the offense. ER-79. And, a firearm capable of operating only with .22 caliber ammunition, or "chambered in .22 caliber," regardless of the magazine's capacity, is not subject to this enhancement. ER-79.

The firearm alleged by the Government and in the PSR to be a semiautomatic was a Glock Model 17 (the "Glock 17"). ER-125. Mr. Kurns's name appears on the associated ATF 4473 Form between Modern Pawn and the buyer. ER-125. However, nothing in the law enforcement investigation materials suggested that the Glock 17 had *any* feature of a semiautomatic firearm. ER-151. The only information about this firearm came from the ATF Form, which merely identified the make, model, and serial number. ER-42, ER-151. No video surveillance footage exists for this transaction. ER-35.

Officer Peyton Jones, an employee of the United States Probation Office (USPO), conducted the presentence investigation on behalf of the district court. ER-43. Officer Jones, in an attempt to discover whether one of the guns could meet the semiautomatic definition, called Agent Caleb Enk, the federal investigator in the Modern Pawn case, to obtain the name of the person who bought the Glock 17 from Modern Pawn. ER-66. (The buyer's name had been redacted on the ATF Form provided to the USPO and the defendant in discovery. ER-66.) USPO Jones received the seller's name, Mr. Zachariah Brown, from Agent Enk. ER-66. Officer Jones then searched for the person's name on a

11

database or "resource" funded by the judiciary.  ER-66–68.  USPO Jones

called several times and left messages and finally connected with Mr.

Brown on the third attempt.  ER-67.

     After speaking with Mr. Brown, USPO Jones sent the email below

on July 19, 2023, to Agent Enk, the federal law enforcement agent, and

the prosecutor, Ms. Stewart.  ER-65.



ER-198.  USPO Jones testified at sentencing that he intentionally chose

not to send the email to defense counsel because he wanted "to keep the

witness's contact information from being in hands it shouldn't be."  ER-

70–71.  No notarized statement or testimony from Mr. Brown about the

Glock 17's magazine was produced. ER-12. On September 29, defense counsel learned of the email's existence from reading the draft presentence report and had to contact the prosecutor to obtain the email itself. ER-89. The only evidence that Mr. Kurns sold a semiautomatic firearm with a magazine capable of accepting more than 15 rounds is this email. ER-151. During Agent Enk's testimony at sentencing about the Glock 17's magazine capacity, he acknowledged he could "only base [his] knowledge on that from conversations with other people who were connected to the case." ER-42. These "other people" appear to be only USPO Jones. ER-43.

Citing separation of powers issues and Rule 32 discovery violations by the Government, defense counsel objected to the Glock 17 as the basis for the semiautomatic enhancement before and during sentencing. ER-85, ER-197–202. The Government responded with new information from Agent Enk that one other weapon could qualify as a semiautomatic weapon with a large capacity magazine. ER-52–54. Agent Enk testified that one of the surveillance camera stills shows Mr. Kurns holding what "appears" to be "an AR-style pistol." ER-29. Agent

Enk testified that "the magazine size protruding from the gun would be indicative of more than 15 rounds." ER-29.

This is the photograph from which Agent Enk identified the "AR-style" weapon and magazine:



ER-150. The weapon in the picture is not identified or described in any of the law enforcement investigation documents, the presentence report,

14

or any ATF 4473 Forms. ER-139–79. Defense counsel asked Agent Enk if he could identify the make, model, or serial number of the weapon; he could not. ER-55. Defense counsel also asked Agent Enk how he knew the gun in the photograph was not a replica or BB gun, and he could not answer with certainty because this weapon was not recovered by the ATF during its investigation. ER-55–56.

If it is indeed a semiautomatic, to serve as evidence for the base offense level increase, the firearm must have a magazine capacity of more than 15 rounds, and it must not be chambered in .22 caliber ammunition. ER-79. Defense counsel asked how Agent Enk knew this weapon was not chambered in .22 caliber, and Agent Enk responded, "I can't tell that from the photo." ER-56. An expert witness for the defense testified that Glock, for example, manufactures magazines of several capacities, including magazines capable of holding a maximum of 10 rounds of ammunition. ER-61–62. These 10-round magazines are widely available for purchase from online retailers. ER-62. In fact, California requires semiautomatic magazines of any make or model to have a maximum capacity of 10 rounds of ammunition. ER-62. Apart

15

from its appearance, the Government offered no proof about the magazine capacity of the "AR-style pistol."

Defense counsel argued that evidence of the Glock 17 should be excluded, and that Agent Enk's inconclusive testimony about the "AR-style" weapon in the photograph was insufficient to prove the facts necessary to sustain the semiautomatic enhancement. ER-78–79.

Because of defense counsel's objections regarding the procedural deficiencies and lack of reliability for the Glock 17 evidence, the district court relied instead on the photograph of the unidentified "AR-style" weapon to increase Mr. Kurns's base offense level:

> Well, with all due respect, Mr. Aarab, the reason I took that approach was because you were attacking the other high-capacity magazine at issue and the process in which Officer Jones communicated the information to Ms. Stewart. So I was trying to avoid a potential appealable issue there.

ER-83. After defense counsel again objected to the email about the Glock 17 on the basis of the separation of powers doctrine, the district court responded, "well, if I were relying upon that weapon [the Glock 17], then I think you might have a point. But I'm not relying on that weapon in this case as a high-capacity magazine." ER-85. In response, defense counsel pointed out that substituting a "grainy" photo of the

16

AR-style weapon for an emailed description of the Glock 17 is still insufficient to prove the facts necessary to apply the six-point semiautomatic enhancement.  ER-85.

Based solely on what "appeared" to be an "AR-style" weapon in the photograph, the district court found that Mr. Kurns possessed a semiautomatic firearm capable of accepting a large capacity magazine under Guidelines § 2K2.1(a)(4)(B), resulting in an adjusted offense level of 20 rather than 14.  ER-97.  Then, the district court applied a four-point specific offense increase (to 24) because it found that Mr. Kurns possessed 8–24 firearms under Guidelines § 2K2.1(b)(1)(B), rather than a two-point increase for 3–7 firearms.  ER-97.  Next, the district court applied a two-point increase because one of the firearms sold to Modern Pawn was stolen (26), and it decreased his offense level by three points for Mr. Kurns's acceptance of responsibility and timely notification of plea.  ER-97–98.  Thus, Mr. Kurns's total offense level was 23.  ER-98.

Based on this calculation, the Guidelines recommended a term of custody between 84–105 months (at least seven years) followed by one to three years of supervised release.  ER-111.  Without the six-point semiautomatic enhancement and with only two additional points for

17

possessing between 3–7 firearms (ER-90), Mr. Kurns's total offense level would have been 15, providing for a range of 37–46 months' custody (more than three years).  The enhancements therefore increased Mr. Kurns's Guidelines range by at least four years.  Mr. Kurns also faced up to $250,000 in possible fines.  ER-99.

The district court cited the sentencing factors under 18 U.S.C. § 3553(a) in its determination, including:

> Mr. Kurns's history and characteristics, the seriousness of this offense, the obligation to promote respect for the law, the obligation to provide just punishment, the obligation to provide deterrence, the obligation to protect the public from further crimes by Mr. Kurns, and the obligation to provide Mr. Kurns with needed education and vocational training and medical care.

ER-112.  Mr. Kurns received a sentence of imprisonment for 36 months. ER-4.  In its decision to vary downward from the Guidelines, the district court cited Mr. Kurns's revocation for his State sentence, which would "keep Mr. Kurns in custody until he behaves appropriately" and "give Mr. Kurns a chance" to be released on parole.  ER-113–14. Additionally, the district court emphasized the need to "avoid disparate sentences with the codefendants . . . to more accurately reflect the role

that Mr. Kurns played relative to the role of these codefendants.  ER-
113.

## SUMMARY OF THE ARGUMENT

Mr. Kurns pleaded guilty without a plea agreement to being a
prohibited person in possession of a firearm.  He admitted at his change
of plea to selling two firearms to his employer, Modern Pawn.  In his
capacity as a pawnshop employee, he acted as the transferor of
additional firearms from Modern Pawn to other customers.  The ATF
4473 Forms that document these gun sales do not describe any of the
transferred firearms as being semiautomatic weapons or as having
large capacity magazines, nor does any other evidence produced in the
ATF investigation.  The Forms also do not specify whether Mr. Kurns
was the employee who merely filled out the paperwork for the gun
sales, or whether he was the employee who actually handled the guns
and sold them to the customers.  The Government's sentencing witness
also could not tell the Court whether Mr. Kurns had in fact handled
each of these guns, or whether he had simply completed the paperwork.

The district court told Mr. Kurns at sentencing that if he wished
to dispute the Government's allegation that he "possessed" every

19

firearm for which he is listed on an ATF 4473 Form as the transferor, then he could take the stand and testify under oath that he did not possess these firearms. Mr. Kurns did not do so. The district court clearly erred in requiring Mr. Kurns to dispute the Government's proof by testifying, rather than analyzing the Government's proof on its merits to assess whether it was clear and convincing. The district court further abused its discretion in concluding that the Government's proof did meet the clear and convincing evidentiary standard required for application of the four-point enhancement for possession of 8–24 firearms.

The first time Mr. Kurns learned he may be facing an additional six-point enhancement under the Guidelines for possessing firearms with large capacity magazines was when he reviewed the draft presentence report and saw that the USPO had conducted an investigation designed to prove that fact, and had provided the evidence he obtained to the Government but not to him. The USPO, an employee of the judicial branch, had violated the separation of powers doctrine by acting as an agent of the executive branch, which is tasked with investigating and prosecuting criminal offenses. Mr. Kurns objected to

20

this untimely disclosed and illegally obtained evidence being used to enhance his offense level under the Guidelines. The district court agreed.

But rather than resolve that objection in Mr. Kurns's favor, the court chose instead to find the enhancement was proved by a different gun, which was not noticed as a semiautomatic with a large capacity magazine in the presentence report. This different gun, an "AR-style" pistol, was alleged by the Government at sentencing to be a semiautomatic weapon capable of accepting a large capacity magazine. Although the ATF agent admitted on cross examination that he could not be sure from the photo alone that the firearm had a large capacity magazine as defined by the Guidelines, the court nonetheless concluded that this firearm was sufficient to sustain the Government's burden of proof. The district court abused its discretion when it relied on this inconclusive photo and newly disclosed testimonial evidence to increase Mr. Kurns's offense level by six points.

When sentencing enhancements are based upon facts not found during the guilt-phase and a negative inference drawn from a defendant's failure to testify, due process is implicated. The remedy for

the violation of Mr. Kurns's Fifth Amendment rights is a reversal of the application of these Guidelines enhancements and a remand for resentencing.

## STANDARDS OF REVIEW

A district court's interpretation of the Sentencing Guidelines is reviewed de novo. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). If the district court interpreted the correct Guidelines provision, then the "district court's findings of fact [are reviewed] for clear error and its application of the Sentencing Guidelines to the facts for abuse of discretion." *United States v. Nungaray*, 697 F.3d 1114, 1116 (9th Cir. 2012).

Although an error in calculating a defendant's Guidelines range is subject to harmless error review, "[n]ormally, [a] mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires [this Court] to remand for resentencing." *United States v. Prigan*, 8 F.4th 1115, 1122 (9th Cir. 2021) (quoting *United States v. McCarns*, 900 F.3d 1141, 1145 (9th Cir. 2018)). Constitutional errors at sentencing are reversible unless the error is

proven harmless beyond a reasonable doubt. *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000).

## ARGUMENT

I. **The district court violated the Fifth Amendment and committed reversible error when it increased Mr. Kurns's total offense level by 8 points, in reliance on facially insufficient evidence under any standard of proof.**

The United States Constitution guarantees criminal defendants the right to due process of law. U.S. Const. art. III, § 2; amend. V. The Fifth Amendment's due process protections and the privilege against self-incrimination guard a defendant's interests in receiving a procedurally fair sentence. *Mezas de Jesus*, 217 F.3d at 642 (internal citations omitted).

The Government bears the burden of proving the facts underlying a sentence enhancement. *United States v. Lonich*, 23 F.4th 881, 910 (9th Cir. 2022). A sentencing court may consider conduct unproven at the guilt phase as long as it meets at least the preponderance of the evidence standard. *Mezas de Jesus*, 217 F.3d at 642. Though less demanding than the clear and convincing standard, the preponderance standard must still be "meaningful" to satisfy due process. *Id.* at 644.

23

When a sentencing enhancement presents particular due process risks, the enhancement must be proved by clear and convincing evidence, which requires the factfinder to have "'an abiding conviction that the truth of [the] factual contentions' at issue is 'highly probable.'" *Lonich*, 23 F.4th at 916 (internal citations omitted).

United States Supreme Court precedent strictly prohibits a sentencing court from drawing a negative inference against a defendant for his failure to testify on his own behalf. *Mitchell v. United States*, 526 U.S. 314, 328 (1999). A district court misapplies the standard of proof when it weighs the Government's evidence against a defendant's silence. *Mezas de Jesus*, 217 F.3d at 644. "*Any effort* to compel [a defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." *Mitchell v. United States*, 526 U.S. 314, 326 (1999) (quoting *Estelle v. Smith*, 451 U.S. 454, 463 (1981)) (emphasis added).

Here, the district court's determination that Mr. Kurns possessed 8–24 firearms resulted from its misapplication of the burden of proof and the negative inference it drew against Mr. Kurns for his decision not to testify under oath. Furthermore, the district court's

24

determination that Mr. Kurns possessed a semiautomatic firearm with a large capacity magazine relied on facially insufficient evidence under either the preponderance standard or the clear and convincing standard. The district court committed reversible error when it imposed these enhancements on Mr. Kurns in violation of his Fifth Amendment rights.

**A. Due Process demands that the Government prove Mr. Kurns's sentencing enhancements by clear and convincing evidence because the enhancements were not based on facts found during the guilt phase.**

Though the preponderance of evidence standard is generally appropriate when finding facts at sentencing, the heightened clear and convincing standard applies "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." *United States v. Hymas*, 780 F.3d 1285, 1289–90 (9th Cir. 2015) (internal citations omitted). The *Valensia* factors help determine whether a Guideline enhancement has an extremely disproportionate effect. *United States v. Valensia*, 222 F.3d 1173 (9th Cir. 2000), *vacated on other grounds by United States v. Valensia*, 532 U.S. 901 (2001). The factors include "whether the enhanced sentence negates the presumption of innocence or *the prosecution's burden of proof* for the

25

crime alleged in the indictment" and whether the increase in the base offense level surpasses four points. *Hymas*, 780 F.3d at 1290 (emphasis added).

"[T]he touchstone underlying this heightened burden of proof has always been due process." *United States v. Treadwell*, 593 F.3d 990, 1001 (9th Cir. 2010). When the sentencing enhancement does not arise from the facts underlying the defendant's conviction, use of the clear and convincing standard is necessary to alleviate due process concerns because the defendant did not have the opportunity to challenge these facts in the guilt phase, particularly in cases involving multiple transactions. *Hymas*, 780 F.3d at 1291.[1]

Here, the district court ultimately agreed that the clear and convincing standard applied to Mr. Kurns's sentencing factors. ER-86. However, the evidence offered by the Government is insufficient under both the preponderance and clear and convincing standards.

---

[1] Though the pending *Lucas* rehearing may decide the preponderance standard should apply in these cases, as discussed below, the clear and convincing standard currently applies to sentencing enhancements for possession of a semiautomatic firearm with a large capacity magazine. *United States v. Lucas*, 70 F.4th 1218 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 77 F.4th 1275 (9th Cir. 2023).

The nature of Mr. Kurns's "possession" of the firearms beyond those he admitted to in his guilty plea is confined to his role at Modern Pawn. This sets his case apart from a typical § 922(g) prosecution in which the defendant personally possessed the guns and the Government can specifically identify the weapons. *See, e.g., United States v. Parlor*, 2 F.4th 807 (9th Cir. 2021) (defendant kept firearms in his storage unit, personally sold firearms to an undercover agent during a controlled buy, and had a revolver under his mattress).

In Mr. Kurns's case, like in *Hymas*, the clear and convincing standard is more appropriate for the firearm quantity and semiautomatic enhancements because they rest on conduct unproven in a guilt-phase. *Hymas*, 780 F.3d at 1291. Mr. Kurns pleaded guilty to possessing the two firearms he sold to Modern Pawn as a customer, neither of which was a semiautomatic. ER-24–25. The gun sales he allegedly helped facilitate between Modern Pawn and its customers in his role as an employee represent a different course of conduct. Thus, Mr. Kurns's case presents heightened due process concerns for enhancements imposed "based on conduct for which he was not convicted." *Id.* at 1291.

27

**B.    The district court violated Mr. Kurns's right against self-incrimination when it qualitatively compared the Government's insufficient evidence with Mr. Kurns's silence.**

The United States Supreme Court has held that a sentencing court is prohibited from drawing an adverse inference against a defendant who chooses not to testify on his own behalf. *Mitchell*, 526 U.S. at 328. A criminal defendant's guilty plea does not waive his Fifth Amendment privilege against self-incrimination at sentencing. *Id.* at 327–30. "The Government often has a motive to demand a severe sentence, so the central purpose of the privilege – to protect a defendant from being the unwilling instrument of his or her own condemnation – remains of vital importance." *Id.* at 329. The Ninth Circuit has recognized that when a sentencing court qualitatively weighs the evidence within the standard of proof (*i.e.*, balancing the Government's evidence against the defendant's silence to determine that the Government has met the evidentiary standard), it violates both the defendant's Fifth Amendment right against self-incrimination and the right to due process by shifting the burden of proof from the Government to the defendant. *Mezas de Jesus,* 217 F.3d at 644–45.

28

These two concepts, the sentencing court's approach to weighing the evidentiary burden and the defendant's Fifth Amendment rights, are closely linked. When a district court focuses on the "quantum" of evidence offered by each party, it requires a defendant to offer testimony to "outweigh" the evidence produced by the Government. This forces the defendant to sacrifice his Fifth Amendment privilege in order to counterbalance the Government's evidence. *Id.* at 643–44.

A violation of a defendant's Fifth Amendment privilege arising from the district court's misapplication of the burden of proof is not harmless beyond a reasonable doubt. *Id.* at 645. In *Mezas de Jesus*, this Court reversed the defendant's sentence because the district court's finding of the facts supporting a sentencing enhancement was so insufficient as to violate the defendant's due process interests in a procedurally fair sentencing and an accurate application of the Guidelines. *Id.* at 644. The only evidence offered by the Government to prove the enhancement was a hearsay statement by an alleged victim contained in a police report and subsequently quoted in the presentence investigation report. *Id.*

29

Because the evidence, though "scant," was not affirmatively contradicted by the defendant, the district court also "implicitly drew an adverse inference from Mezas de Jesus's silence at sentencing." *Id.* The district court's statements that the defendant should testify in order to combat the Government's evidence violated the Fifth Amendment:

> You tell me [the unavailable witness's story is] not the true story. *I don't have any other evidence as to a truer story. . . .*
>
> So if the court is presented with a prima facie case by the government that a kidnapping occurred, wouldn't I have to see something from you like, for instance, *a statement under oath from your client that it didn't happen*, in order to require an evidentiary hearing?

*Id.* at 645 (emphasis added). This Court found that the district court's erroneous application of the burden of proof "deprived [the defendant] of his due process interest in 'the accurate application of the Guidelines within statutory limits.'" *Id.* (quoting *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir. 1991)).

Here, the district court engaged in the exact impermissible burden-shifting that the Ninth Circuit reversed in *Mezas de Jesus*. When defense counsel questioned the Government's witness on the evidence supporting Mr. Kurns's possession of each firearm, the district court stated:

30

> [I]t's a preponderance of the evidence standard here in the sentencing hearing. *If you want to meet the preponderance, you can put Mr. Kurns on the stand and have him deny that he touched those weapons under oath.*

ER-41 (emphasis added). The district court initially applied the preponderance standard to the Government's evidence and weighed it against Mr. Kurns's silence, rather than evaluating the "convincing force of the [Government's] evidence" on its own. *Id.* at 644. Critically, the district court stated, not once, but *twice* that Mr. Kurns needed to testify on his own behalf in order to meet the standard of proof: "you can put Mr. Kurns on the stand under oath and have him deny that he handled those weapons if that's the evidence." ER-40–41.

Additionally, the negative inference drawn against Mr. Kurns for choosing not to testify shifted the burden of proof and undermined his ability to challenge the sufficiency of the Government's evidence. Though the district court later agreed that the clear and convincing standard was correct (ER-86), it had already decided that Mr. Kurns needed to provide testimony that he did *not* possess or control the weapons alleged by the Government in order prevent the Government from prevailing. ER-40–41. The Government admitted that Mr. Kurns's signature on the ATF 4473 Forms alone did not necessarily

31

indicate that Mr. Kurns controlled the firearm because it proved only that Mr. Kurns performed the background check and filled out the transfer paperwork. ER-39, ER-59–60. When defense counsel questioned whether the Government could provide corresponding surveillance footage showing Mr. Kurns handling the weapon for each ATF 4473 Form (it could not), the district court interrupted the examination and posited, "I'm assuming we're going to get the same answer for all of these weapons." ER-40. Because the district court decided that the Government need not prove every firearm underlying the requested enhancement (ER-40), the evidence presented by the Government did not meet a preponderance or a clear and convincing standard.

The district court's statements that Mr. Kurns needed to testify on his own behalf to counterbalance the Government's evidence violated Mr. Kurns's Fifth Amendment privilege. The district court's finding that Mr. Kurns's offense involved 8–24 firearms increased his adjusted offense level by four points, two more than the enhancement he would have received for 3–7 firearms. USSG § 2K2.1(b)(1). In weighing Mr. Kurns's silence against the Government's insufficient evidence, the

32

district court shifted the burden of proof and committed reversible error in its application of the firearm quantity enhancement under *Mitchell* and *Mezas de Jesus*.

> **C.    The Government's evidence that Mr. Kurns possessed a semiautomatic weapon with a large capacity magazine is insufficient under any evidentiary standard.**

The Guidelines provide for a base offense level of 20 when "the offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine."  USSG § 2K2.1(a)(4)(B).  The definition of a "semiautomatic firearm capable of accepting a large capacity magazine" requires that at the time of the offense, the firearm "has the ability to fire many rounds without reloading" because a magazine capable of accepting more than 15 rounds of ammunition is attached to the firearm or in close proximity, and the attached tubular device is *not* "capable of operating only with .22 caliber rim fire ammunition."  USSG § 2K2.1 app. n.2.

In *Lucas*, the Ninth Circuit examined whether testimony derived from analyzing photographs and videos is sufficient to sustain a semiautomatic enhancement when the Government cannot produce other evidence to prove the firearm's illegal features.  *United States v.*

*Lucas*, 70 F.4th 1218 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 77 F.4th 1275 (9th Cir. 2023).[2]

Apart from the issue of whether the clear and convincing standard applied, *Lucas* held that the Government must prove the firearm had a large capacity magazine (more than 15 rounds) attached or in close proximity at the time of the offense in order to obtain the semiautomatic enhancement. *Id.* at 1223. In *Lucas*, the Court determined that the magazine's capacity could not be ascertained only from testimony based how a firearm and magazine "looked" in a photograph. *Id.* at 1222–23. This is because magazines qualifying as large capacity magazines (capable of accepting more than 15 rounds) and magazines capable of accepting only 10 rounds of ammunition, at least externally, look exactly the same. *Id.* at 1221–22. Lower-capacity

---

[2] This Court ordered rehearing for *Lucas* solely to address the issue of "whether the clear and convincing standard applies for factual findings that have an extreme impact on the sentence in light of *Beckles v. United States*, 580 U.S. 256 (2017)." Order at 1, *United States v. Lucas*, 70 F.4th 1218 (9th Cir. 2023) (No. 22-50064). The outcome of rehearing will not impact the analysis for Mr. Kurns because his case does not turn on the standard of proof. As discussed above, the district court determined that Mr. Kurns should testify on his own behalf in order to combat even the preponderance standard. ER-41.

magazines have an *internal* blocking mechanism which limits the

number of rounds the firearm can accept. *Id.* at 1222–23.

Thus, the Court found the testimonial evidence that the firearm

"looked" like a semiautomatic with a large capacity magazine was

insufficient:

> The government did not physically produce or inspect the
> firearm or the magazine. Without physical evidence, the
> government largely relied on its expert agent, who was, at
> most, equivocal. The agent acknowledged that without
> physical inspection, he could not conclusively state whether
> the magazine could in fact accept more than 15 rounds or
> whether it was instead modified to accept fewer. Nor did the
> agent explain the prevalence of any type of magazine in the
> community; he only relayed his personal experience with
> modified magazines.

*Id.* at 1220, 1222.

Here, the circumstances are remarkably similar. The Government

could not produce either the Glock 17 referenced in the email (ER-42–

43) or the "AR-style" weapon seen in the photograph (ER-56). Instead,

the Government offered only the photograph, which Agent Enk testified

"looks like a magazine for a [sic] AR pistol that would be 30-round

capacity." ER-54–55. But Agent Enk admits he could not tell the

firearm's make or model or even whether the weapon could be a replica

or BB-gun, other than the fact that the ATF did not recover similar BB-

35

guns or replicas in its later raid of Modern Pawn. ER-55–56. Additionally, the defense's expert witness testified that magazines limited to 10 rounds are commonly manufactured, available for purchase online and in Montana, and are actually required in certain areas of the country. ER-61–62. Pawnshops acquire and sell any manner of merchandise without reference to an item's origin, and Modern Pawn was no exception. ER-77.

The district court explicitly declined to rely on the disputed evidence regarding the Glock-17:

> I am not going to even consider the dimensions of the other firearm at issue – let me find that again – the one involving the email at issue. Defendant's Exhibit A. I don't think I need to consider that one in light of the fact that the AR-15 pistol that's shown in Document 33-1, on page 12, upper left corner, that was shown during the hearing, of Mr. Kurns holding that – possessing that weapon, to meet the enhancement.

ER-77–78. The extent of the evidence against Mr. Kurns, then, as characterized by the district court, is "the photograph and Agent Enk's testimony reviewing the photograph that the AR-15 had a large-capacity magazine as allowed under Montana law, that meets the requirement for the large-capacity magazine." ER-77. Not so.

36

Because testimony about a magazine's capacity based exclusively on an expert's evaluation of a magazine's appearance in a photograph is insufficient under *Lucas*, Agent Enk's assertion that it "looked" like a large capacity magazine is not enough.  Furthermore, other than calling it an "AR-style pistol," neither the Government nor Agent Enk could identify the make and model of the weapon pictured in the surveillance photo.  ER-54–55.  Defense counsel also asked Agent Enk how he knew this weapon was not chambered in a .22 caliber, which would also mean the weapon did *not* have a large capacity magazine, and Enk responded, "I can't tell that from the photo."  ER-56.  In other words, the Government's only evidence that Mr. Kurns possessed a large capacity magazine does not establish the elements required by the Guideline definition.

Additionally, the facts in *Lucas* differ from the facts of Mr. Kurns's case in several important respects.  First, Lucas pleaded guilty to possessing the *same* weapon that formed the basis of the requested semiautomatic enhancement.  *Lucas*, 70 F.4th at 1220.  Therefore, the due process concerns in Mr. Kurns's case are greater than in *Lucas* because Mr. Kurns's enhancement rests on uncharged conduct.  Second,

37

multiple pictures and videos found *on Lucas's cellphone* depicted him with the firearm. *Id.* The sum total of the evidence against Mr. Kurns, a grainy still from a pawnshop that sells any manner of used and modified items, is less convincing than the photographic evidence depicting the very firearm Lucas admitted to possessing, which was still too "scant" to justify the enhancement. *Id.* at 1223.

The evidence produced against Mr. Kurns at sentencing is both procedurally flawed and facially insufficient to prove the semiautomatic enhancement. The district court's use of that evidence to impose a six-point sentencing enhancement violated Mr. Kurns's due process rights.

> **D. These errors resulted in at least a two-point increase for the additional firearms and a six-point increase for the semiautomatic weapon in Mr. Kurns's total offense level, substantially affecting his Due Process rights.**

Because the district court found Mr. Kurns possessed a semiautomatic firearm capable of accepting a large capacity magazine, his adjusted offense level was 20 rather than 14. ER-97. The district court added a further four points for Mr. Kurns's possession of "between 18 and 24 firearms," rather than two points for 3–7 firearms. ER-97. Even if Mr. Kurns ultimately received a below-Guidelines sentence, the

38

district court's evaluation of Mr. Kurns's sentencing factors started with a total offense level of 23. ER-98. Absent the district court's errors in applying the two firearms enhancements, Mr. Kurns's total offense level would have been 15, representing a four-year difference in the minimum recommended custodial range.

In fashioning an appropriate sentence for Mr. Kurns, the district court was required to consider "the kinds of sentence and the sentencing range established for [ ] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [ ] issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(4)(A)(i). The Government therefore cannot credibly argue that the incorrectly calculated Guidelines range was a harmless factor in the sentence the district court ultimately decided was "sufficient but not greater than necessary." 18 U.S.C. § 3553(a); *see Mezas de Jesus*, 217 F.3d at 642, 645.

Importantly, the difference in his total offense level alone cannot account for the harm inflicted by the district court's drawing a negative inference against Mr. Kurns for his choice not to testify. The influence this expectation had on the district court's evaluation of Mr. Kurns's

39

overall sentence is impossible to quantify.  Overall, the procedural and evidentiary errors committed by the district court had a substantial effect on Mr. Kurns's constitutional rights, his total offense level, and the § 3553(a) factors.  Thus, they cannot be considered harmless beyond a reasonable doubt.  *Id.* at 642.

## CONCLUSION

The district court's calculation of Mr. Kurns's base offense level was both incorrect and made in violation of his constitutional rights. Constitutional violations against a criminal defendant cannot be justified by an erroneous below-Guidelines sentence.  The defendant respectfully requests that this Court reverse the application of the Guidelines enhancements discussed above and remand for resentencing under the correct total offense level.

Respectfully submitted this 20th day of March, 2024.


By:   /s/ *Samir F. Aarab*
        Samir F. Aarab
        BOLAND AARAB PLLP
        Attorney for Defendant-Appellant

40

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-3779

I am the attorney or self-represented party.

**This brief contains** | 7,747 | **words,** including | 122 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [              ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Samir Faerevik Aarab | **Date** | March 20, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)**   23-3779

The undersigned attorney or self-represented party states the following:

◉  I am unaware of any related cases currently pending in this court.

○  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**   /s/ Samir Faerevik Aarab     **Date**  March 20, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 17**                                                        *New 12/01/2018*